IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Travis Geery, on behalf of himself and all others similarly situated, | Civil Action No. 0:21-cv-02028-SAL |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| | **(FLSA Collective Action/Class Action under the S.C. Payment of Wages Act)** |
| Davenport Auto Repair and Collision Center, LLC; Brittany Davenport, individually; Kenneth Davenport, individually; and | **Jury Trial Requested** |
| Defendants. | |

Plaintiff Travis Geery ("Plaintiff"), individually and on behalf of all other similarly situated individuals, by way of his Complaint in the above-captioned matter, would allege and show unto this Honorable Court the following:

## NATURE OF THE ACTION

1. This action is brought individually and as a collective action under the Fair Labor Standards Act, 29 §§ 201 *et seq.*, ("FLSA") asserting that Plaintiff and all others similarly situated, battery technicians, were intentionally misclassified as independent contractors by Davenport Auto Repair and Collision Center, LLC d/b/a Davenport Wrecker Services, Brittany Davenport, and Kenneth Davenport, and as a result were deprived of overtime, minimum wage, and other wages in violation of federal law. Plaintiff brings this case as a collective action on behalf of a group of battery technicians who worked for the

1

Defendants, responding to service calls from motorists and repairing or installing vehicle batteries, within the three years prior to the filing of this Complaint.

2. Plaintiff also brings this action individually and on behalf of all similarly situated current and former battery technicians in South Carolina pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the South Carolina Payment of Wages Act, South Carolina Code Ann. § 4110-10, *et seq.* ("SCPWA"). These claims are proposed as opt-out class claims under Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is a citizen and resident of York County, South Carolina. Plaintiff was employed as a battery technician for Defendant until May 2021.

4. Defendant Davenport Wrecking is a limited liability company organized and existing pursuant to the laws of the State of South Carolina, and has its conducted business in South Carolina and North Carolina.

5. Upon information and belief, Defendants Brittany and Kenneth Davenport, who are husband and wife, are domiciled in York County, South Carolina.

6. At all times relevant to this Complaint, Defendant Brittany Davenport, in her capacity as Owner/Operator of Davenport Wrecking, exercises a high level of control over the FLSA and SCPWA violations herein, including but not limited to intentionally misrepresenting Plaintiff and all those similarly situated as "independent contractors" rather than employees; refusing to review said characterization; and refusing to pay minimum wages, overtime, and other wages to Plaintiff and all those similarly situated. As

such, Defendant Brittany Davenport was Plaintiff's, and all others similarly situated, "employer" for purposes of the FLSA and SCPWA.

7. At all times relevant to this Complaint, Defendant Kenneth Davenport, in his capacity as Owner/ Operator of Davenport Wrecking, exercises a high level of control over the FLSA and SCPWA violations herein, including but not limited to intentionally misrepresenting Plaintiff and all those similarly situated as "independent contractors" rather than employees; refusing to review said characterization; and refusing to pay minimum wages, overtime, and other wages to Plaintiff and all those similarly situated. As such, Defendant Kenneth Davenport was Plaintiff's, and all others similarly situated, "employer" for purposes of the FLSA and SCPWA.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), because this action is based, in part, on the FLSA.

9. In addition, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiffs' pendent and supplemental claims, which are brought pursuant to the statutory and common law of the State of South Carolina, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

9. Plaintiff brings this action as a collective action on behalf of a class of individuals similarly situated. Specifically, Plaintiff brings these claims under the Fair Labor Standards Act as a collective action and will request the Court to grant conditional certification under

29 U.S.C. § 216(b), and to order notices to potential opt-in individuals who performed service calls and battery repairs and installation services for Defendants and who were classified as independent contractors.

10. Potential opt-in members of the collective action are similarly situated to Plaintiff. They all held the same job positions and had substantially similar job requirements and pay provisions. They are or were subject to the same common practices, policies, and plans of Defendants. They all suffer damages in the nature of lost overtime and wages resulting from Defendants' wrongful conduct.

## SOUTH CAROLINA CLASS ACTION ALLEGATIONS

11. Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

12. Plaintiff brings the third Cause of Action, the South Carolina Payment of Wage Act ("SCPWA") claims, as an opt-out class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated current and former individuals classified as "independent contractors" by Defendants in South Carolina within three (3) years prior to the commencement of this lawsuit. ("SC Rule 23 Class").

13. Upon information and belief, this action satisfies the requirements of Rule 23(a), Fed. R. Civ. P., as alleged in the following particulars:

   a. The proposed Plaintiff class is so numerous that joinder of all individual members in this action is impracticable, and the disposition of their claims as a class will benefit the parties and the Court;

   b. There are questions of law and/or facts common to the members of the proposed

      Plaintiff class;

    c. The claims of Plaintiff, the representative of the proposed Plaintiff class, are typical of the claims of the proposed Plaintiff class; and

    d. Plaintiff, the representative of the proposed Plaintiff class, will fairly and adequately protect the interests of the class.

14. In addition, upon information and belief, this action satisfies one or more of the requirements of Rule 23(b) Fed. R. Civ. P., because the questions of law and/or fact common to the members of the proposed Plaintiff class predominate over any questions affecting only individual members.

15. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual SC Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual SC Rule 23 Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public

resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual SC Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual SC Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in impairment of the SC Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

16. Upon information and belief, Defendants violate the SCPWA throughout the State of South Carolina and current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

17. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## STATEMENT OF FACTS

18. During the last three years, Plaintiff and other similarly situated battery technicians worked as battery technicians for Defendants. In this role, Plaintiff and other similarly

situated technicians were responsible for responding to service calls and repairing or installing vehicle batteries for motorists.

19. During the time Plaintiff and other similarly situated battery technicians performed such services for Defendants, Plaintiff and others similarly situated performed work exclusively for Defendants because they were required to work five 12-hour shifts per week (60 hours total per week) and be *en route* to service calls within ten (10) minutes of notification of a call, and therefore could not provide any other battery repairs or installation or related services except those provided to Defendants.

20. Defendants purport to contract with individuals to perform such vehicle service calls and battery installation and repair services. Defendants purport to call these individuals "independent contractors," not employees, thereby avoiding its obligations to pay payroll taxes, workers' compensation insurance, health insurance, unemployment insurance, overtime, and such other benefits.

21. In order to be hired by Defendants, Plaintiff and other similarly situated technicians were required to undergo stringent background checks and credit checks.

22. Each battery technician, including Plaintiff, was required to drive a work vehicle with a decal on the sides of it that displayed Defendants' logo, and the costs of damage to the company vehicle was deducted from their paychecks.

23. The so-called "independent contractor" battery technicians that work for Defendants, including Plaintiff, are required to work scheduled mandatory 12-hour shifts, five days per week. Defendants give them specific instructions as to how to respond to service calls, interacting with customers, and performing battery installation or repair work.

24. Plaintiff and others similarly situated were not allowed to choose their days of work and are or were required to request from Defendants days off from work at least two months in advance.

25. Plaintiff and others similarly situated were advised by Defendants that they would be taken off of the schedule entirely and terminated if they could not work five full shifts every week.

26. In addition, the battery technicians, including Plaintiff, were required to train in battery installation and repair, as some of the individuals hired by Defendants have no previous experience.

27. All of the telecommunication equipment used by the battery technicians, including Plaintiff, were supplied by Defendants.

28. Battery technicians, including Plaintiff, worked well over 40 hours per week. Battery technicians, including Plaintiff, were required to work at least 60 hours per week. None of these technicians receive or received any overtime pay for the work performed beyond 40 hours a week.

29. For example, during a typical workweek, Plaintiff worked five days per week, Monday through Saturday, from 8:00 A.M. until 8:00 P.M.

30. There is virtually no opportunity for battery technicians, including Plaintiff, to work for any other companies performing similar services as Defendants because Defendants exercise strict control over how their schedules and how their time is spent during the workday, including requiring battery technicians to be *en route* to service calls within 10 minutes of notification of a call.

31. The battery technicians, including Plaintiff, effectively worked for Defendants on a full time and continuing basis; Plaintiff did not sell or advertise his services to the general public or work as a contractor for anyone other than Defendants.

32. Further, in the event that Defendants are unsatisfied with work performed by battery technicians, Defendants require such technicians to go out and correct any deficiency, and to make any repairs and on such occasions, the technicians, including Plaintiff, are not paid for their time working to correct such problems.

33. Additionally, battery technicians, including Plaintiff, are not permitted to negotiate the price of the service with either the customer or the Defendants.

34. The battery technicians, including Plaintiff, were paid on a piece rate basis, being paid 36% of the cost of each service call job, regardless of how many hours each job took or the skill with which the jobs were performed.

35. Plaintiff and others similarly situated were required to maintain the five shifts per week, 12-hour shifts schedule, regardless of the number of service calls received. As such, once the COVID-19 pandemic began, Plaintiff and others similarly situated were receiving a fraction of the service calls and therefore were being paid less than minimum wage for the sixty hours worked per week.

36. By virtue of an arrangement between Defendants and the Automobile Association of America ("AAA"), Plaintiff and others similarly situated would receive merit-based payments for positively reviewed service calls. Around March 2021, Defendants stopped transmitting the merit-based AAA payments to Plaintiff and others similarly situated on the purported basis that AAA "didn't have the money to pay the bonuses."

The failure to transmit such bonuses reduced Plaintiff's weekly take-home pay by an average of $100.00 per week.

37. In addition, Plaintiff and others similarly situated received credit card tips that motorists, at their discretion, would gratuitously provide on occasion. Defendants charged employees 10% of every $10.00 in tips, purportedly as a way to recover credit card fees. Upon information and belief, however, credit card processing fees charged to merchants do not exceed three (3) percent.

38. Defendants did not keep accurate records of wages earned or of hours worked by Plaintiff and others similarly situated, nor did Defendants provide Plaintiff and others similarly situated with itemized statements illustrating their pay or deductions made from their pay.

39. Defendants did not provide notice to Plaintiff and others similarly situated explaining the FLSA or the SCPWA.

## FIRST CAUSE OF ACTION
**Violation of Fair Labor Standards Act, 29 U.S.C. § 206**

40. Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

41. As set forth above, Plaintiff, and all others similarly situated, were employed by Defendants, and were intentionally misclassified as independent contractors.

42. At all times relevant hereto, Defendants engaged in interstate commerce or in the provision of services for commerce as defined by 29 U.S.C. § 203(r) and 203(s).

43. At all times relevant hereto, Defendants' annual gross income of sales made, or business done was not less than Five Hundred Thousand and 0/100 ($500,000.00) Dollars. Alternatively, Plaintiff, and all other similarly situated employees, worked in interstate commerce so as to fall within the protection of the FLSA.

44. The business of Defendants was and is engaged in commerce as defined by § 203(s) and, as such, Defendants are subject to and covered by the FLSA.

45. The FLSA, 29 U.S.C. § 206, requires employers to pay nonexempt employees a minimum wage of Seven and 25/100 ($7.25) Dollars per hour.

46. Defendants failed to pay Plaintiff and others similarly situated the minimum wages to which they are entitled under the FLSA, despite numerous requests from Plaintiff for same.

47. In failing to do so, Defendants have willfully violated the FLSA, in reckless disregard of the rights of Plaintiff and others similarly situated.

48. As a result of Defendants' willful violations of the FLSA, Plaintiff and others similarly situated have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

**SECOND CAUSE OF ACTION**
**Violation of Fair Labor Standards Act 29 U.S.C. § 207**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

49. Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

50. This cause of action arises from Defendants' violations of the FLSA, 29 U.S.C. § 207, for their failure to pay Plaintiff and other similarly situated employees at the overtime rate for all hours worked in excess of forty (40) per workweek.

51. As set forth above, Plaintiff, and all other similarly situated employees, were employed by Defendants and not independent contractors.

52. At all times pertinent hereto, Defendants engaged in interstate commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(r) and 203(s).

53. At all times pertinent hereto, Defendants' annual gross volume of sales made or business done was not less than Five Hundred Thousand and 0/100 ($500,000.00) Dollars. Alternatively, Plaintiff, and all other similarly situated employees, worked in interstate commerce so as to fall within the protection of the FLSA.

54. The business of Defendants was and is an enterprise engaged in commerce as defined by 29 U.S.C. § 203(s)(1) and, as such, Defendants are subject to, and covered by, the FLSA.

55. Plaintiff asserts that under the economic realities test of the FLSA, Plaintiff and others similarly situated are or were improperly classified as independent contractors rather than employees of Defendants, and that Defendants exercised sufficient control over their day-to-day activities, and economic circumstances, to make Plaintiff and others similarly situated statutory employees under the FLSA. Plaintiff and other similarly situated battery technicians are therefore covered employees under the FLSA.

56. Plaintiff and other similarly situated individuals regularly work or worked well more than forty (40) hours per week every week, at least sixty (60) hours per week.

57. Defendants failed to pay Plaintiff and other similarly situated employees at the overtime rate of one-and-one-half times the normal rate of pay for all hours worked over forty (40) per workweek.

58. Defendants' failure to pay compensation at the overtime rate for all hours worked over forty (40) per workweek, is a willful violation of the FLSA, since their conduct shows that they either knew that the conduct violated the FLSA or showed reckless disregard for whether their actions complied with the FLSA.

### THIRD CAUSE OF ACTION
**Violation of South Carolina Payment of Wages Act S.C. Code § 41-10-10, et. al.**
**(Brought on behalf of Plaintiff and the SC Rule 23 Class)**

59. Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

60. At all relevant times, Defendants have employed, and/or continues to employee, Plaintiff and each of the SC Class members within the meaning of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110 ("SCPWA"). Plaintiff and the SC Class members are "employees" within the meaning of the SCPWA and are not free from the control and direction of Defendants.

61. Defendants are "employers" as defined by the SCPWA, S.C. Code Ann. § 41-10-10(1), because they employ individuals in the State of South Carolina, and as owner/operators of Davenport Wrecking.

62. Pursuant to S.C. Code Ann. § 41-10-40(C) of the SCPWA, "[e]very employer shall notify each employee in writing at the time of hiring of the normal hours and wages

agreed upon, the time and place of payment . . . ." and the "employer shall furnish each employee with an itemized statement showing his gross pay and the deductions made from his wages for each pay period."

63. Defendants willfully failed to provide Plaintiff and others similarly situated wage statements for each of their pay periods compliant with the SCPWA as required by the law.

64. Pursuant to S.C. Code Ann. § 41-10-40(C) of the SCPWA, "[a]n employer shall not withhold or divert any portion of the employee's wages unless the employer is required or permitted to do so by state or federal law . . . ."

65. Further, "any changes [to] the terms [of wages] must be made in writing at least seven calendar days before they become effective." S.C. Code Ann. § 41-10-30(A).

66. Defendants, however, did not pay Plaintiff and the SC Class members all wages due to them, nor did Defendants provide Plaintiff and the SC Class members with at least seven days advance written notice of the deductions or the amounts of the deductions Defendant made to their paychecks.

67. For example, Defendants made unauthorized and illegal deductions from the wages of Plaintiff and the SC Class members for improper reasons (e.g., "didn't have the money") and without advance written notice for items such as failing to arrive transmit merit-based payments and making excessive deductions for credit card processing fees, as well as for damage to any company vehicle or equipment.

68. Accordingly, Plaintiff and the members of the SC Class are entitled to receive all compensation of "wages" due and owing to them.

69. Defendants willfully failed to pay Plaintiff and others similarly situated "wages" as defined in section 41-10-10(2) of the SCPWA for all work performed, according to the law.

70. Defendants have withheld wages of the Plaintiff and others similarly situated without providing advance notice of such amounts and absent any lawfully sufficient reason for such conduct.

71. As a direct and proximate result of Defendants' willful conduct, Plaintiff and others similarly situated have suffered substantial losses and have been deprived of compensation to which they are entitled, including monetary damages in the amount of three (3) times the amount of their unpaid wages and other remedies afforded under state and federal law as well as costs and reasonable attorneys' fees pursuant to S.C. Code Ann. § 41-10-80 of the SCPWA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

    a.    An order authorizing the sending of appropriate notice to current and former employees of Defendants who are potential members of the collective action under the Fair Labor Standards Act;

    b.    A declaratory judgment that Defendants have willfully and in bad faith violated the minimum wage and overtimes provisions of the FLSA, and have deprived Plaintiff and the FLSA Collective Members of their rights to such compensation;

    c.    An order requiring Defendants to provide a complete and accurate accounting of all the minimum wages and overtime wages to which Plaintiffs and the FLSA Collective Members are entitled;

    d.    An award of monetary damages to Plaintiff and the FLSA Collective Members in the form of back pay for unpaid minimum and overtime wages due, together with liquidated damages in an equal amount;

    e.    Injunctive relief ordering Defendants to amend their wage and hour policies to comply with applicable laws

    f.    Pre-judgment interest;

    g.    An order certifying a class action under Rule 23 of the Federal Rules of Civil Procedure to remedy the class-wide violations of the South Carolina Payment of Wages Act suffered by the SC Rule 23 Class;

    h.    An award of monetary damages to Plaintiff and the members of the SC Rule 23 Class in the form of back pay for all unpaid wages due, together with treble damages pursuant to the South Carolina Payment of Wages Act;

    i.    A service award to Plaintiff for representing the FLSA Collective Class and the SC Rule 23 Class;

    j.    Attorneys' fees and costs; and

    k.    Such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: July 7, 2021                /s/ Casey Martens

        Casey Martens (#12812)
        Molly R. Hamilton Cawley (#11838)
        MHC Law, LLC
        460 King Street, Suite 200
        Charleston, SC  29403
        Tel: (843) 225-8651
        Casey@mhc-lawfirm.com
        Molly@mhc-lawfirm.com

        **ATTORNEYS FOR PLAINTIFF**

## **VERIFICATION**

I, Casey Martens, declare as follows:

I am the attorney for Plaintiff and have read the foregoing Complaint with Jury Demand and know the contents thereof. I am informed and believe that the matters stated therein are true and, on that ground, allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of July, 2021, at Charleston, South Carolina.

/s/ Casey Martens
Casey Martens